## STATE ex rel SPRUNGLE, Plaintiff-Appellee, v. BARD, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21989.   Decided December 18, 1950.

C. C. Fowerbaugh, Joseph L. Sweeny, Cleveland, for plaintiff-appellee.

George J. McMonagle, Cleveland, for defendant-appellant.

### OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment of the Juvenile Court finding the defendant guilty, the proceedings being one in bastardy.

The complainant was a married woman at the time the child was conceived and also at the time of its birth.  Her husband was a member of the Armed Services of the United States, he having entered such Services on February 15, 1943

and was sent overseas in June, 1943. He received his Honorable Discharge in Paris, France, on April 14, 1947. He did not return to this country and on August 16, 1947, he met death by drowning and was buried in Bagnolet Cemetery in Paris, France. The complainant testified that the bastard child was conceived about March 1, 1946 and was born November 15, 1946 and that the defendant was the father of said child.

This complaint in bastardy was filed May 6, 1949 about nine months after the death of the complainant's husband.

There is just one question presented:—Can the prosecuting witness maintain this action in bastardy against the defendant, when the child was conceived and born while she was a married woman, the proceeding being commenced, however, after the death of her husband?

**Sec. 12110 GC** provides:

"When an unmarried woman, who has been delivered of, or is pregnant with a bastard child, makes a complaint in writing, under oath, before a justice of the peace, or, in the juvenile court, charging a person with being the father of such child, the judge or justice thereupon shall issue his warrant, directed to any sheriff, police officer or constable of the state, commanding him to pursue and arrest such accused person in any county therein, and bring him forthwith before such judge or justice to answer such complaint."

At common law there could be no question but that the complainant could maintain an action in bastardy under the uncontroverted facts in this case. Her husband was "beyond the seas" and access between them was impossible for over two years prior to the time the child was conceived.

It is the claim of the defendant that the right of the complainant to maintain the action is conclusively determined in Ohio by the case of **Haworth v. Gill, 30 Oh St 627.** The facts in the Haworth case were that the complainant was married to John B. Gill on March 26, 1869, and that she continued a "feme covert" until November 12, 1873 when she obtained a decree of divorce. The child was begotten in June, 1872, and born March 22, 1873. The complaint in bastardy was filed December 13, 1873, the complainant at that time being an unmarried woman. It was her claim, and she so testified, that the defendant was the father of the child and that her husband had no access to her for more than two years immediately before the birth of the child. The trial court charged the jury that if the proof clearly showed, beyond a reasonable doubt, that the husband of complainant had no access to her for

more than two years immediately before the birth of the child, it was a bastard; and, if at the time of making her complaint in bastardy, she had been divorced from her husband, and if the jury were satisfied, from the evidence, that the defendant was the father of the child, they should find him guilty. Under the instructions, the defendant was found guilty and adjudged the reputed father.

The court said at page 628:

"We think the act in question (70 Ohio Laws 111) (providing for the maintainence and support of illegitimate children) was intended to provide for no such case. Its first section commences thus: 'When any **unmarried** woman, who has been delivered of, or is pregnant with a bastard child, shall make a complaint thereof in writing' * * *. Looking at this phraseology, and to the purpose of the act, as shown by its title, we are very clearly of the opinion that it was not intended to invite or authorize an inquiry into the legitimacy of children begotten and born in lawful wedlock, whenever a heartless mother might desire to bastardize them at the expense of her own infamy."

At page 629, the court also said:

"But no complaint could have been made in this case either during pregnancy, or for eight months after delivery. The child during all this time, was the innocent and honest child of a married woman; and in any proceeding under this act, would have been conclusively presumed to be legitimate."

The syllabus of the case provides:

"Proceedings in bastardy cannot be maintained on complaint of the mother, under the act of April 3, 1873 (70 O. L. 111; 4 Sayler, 2929; Sec. 5614 Rev. Stat.) 'for the maintence and support of illegitimate children' when the child in question was begotten and born during the lawful wedlock."

Under the holding of this case, a proceeding in bastardy could not be maintained where the complainant was a married woman at the time the child was conceived, and also when the child was born. In other words, in such a proceeding, a child born during the continuance of lawful wedlock is conclusively presumed to be legitimate.

The theory of this case was, in part, followed by the Su-

preme Court in the case of **Miller v. Anderson, 43 Oh St 473.**
The first, second and third paragraphs of the syllabus provide:

"1. The natural father of a child cannot be held for its support, under the statutes of this state, if the mother, after the child was begotten and during pregnancy, contracts a marriage with another man, who marries her with full knowledge of her condition.

"2. By such marriage the man so marrying, consents to stand in loco parentis to such child, and is presumed in law to be the father of the child and this presumption is conclusive.

"3. This rule has application to proceedings under the bastardy statutes, and has no relation to actions where questions of heirship and inheritance are involved."

These cases both quote the first part of the common law definition of a "bastard" found in 1 Blackstone, 454, Chapter 16, which Chapter deals with "the rights of persons" as follows:

"A bastard, by our English laws, is one that is not only begotten but born out of lawful matrimony."

And the opinion in the Haworth case, supra, follows this quotation by the following statement:

"And this statute (referring to what is now §12110 GC) by limiting complaints under it to unmarried women, evidently proceeded on the same idea."

However, at page 457, Blackstone, under the same subject head says:

"As bastards may be born before the coverture or marriage state is begun, or after it is determined, so also children born during wedlock may in some circumstances be bastards. As if the husband be out of the kingdom of England, or, as the law somewhat loosely phrases it, extra quatuor maria, for above nine months, so that no access to his wife can be presumed, her issue during that period shall be bastards. But, generally, during the coverture, access of the husband shall be presumed, unless the contrary be shown; which is such a negative as can only be proved by showing him to be elsewhere; for the general rule is, praesumitur pro legitimatione."

The rule as thus stated, under the undisputed facts in this

case, would include the child born to the complainant as a bastard. And further, since this Chapter of the Code does not define the term "bastard" it must be concluded that the legislature used it as it was understood at common law.

In 2 **O. Jur., page 540** the author says:

"The common law defines a bastard as one who is begotten and born out of lawful wedlock. The term also includes a child born neither within lawful wedlock, nor within a competent time after its termination. Children born within lawful wedlock are bastards, if the fruit, not of marriage, but of adulterous intercourse." Citing: 5 R. C. L. 722.

Subsequent cases presented to the Supreme Court involving proceedings in bastardy where the child was conceived during lawful wedlock but born after the marital relationship had been dissolved, have seemed not to have held to the strict theory of the Haworth case, supra, and in part at least follow the last quotation from Blackstone, as above set forth.

In the case of **Powell v. State, 84 Oh St 165,** the complainant was married to Karl Koch, on March 8, 1898 and was divorced on Sept. 15, 1904, although the journal entry was not filed for about two years thereafter and then entered nunc pro tunc as of Sept. 14, 1904. On Jan. 7, 1907, she filed a complaint in bastardy against the defendant alleging that on the 12th day of January, 1905, she was delivered of a bastard child and that the defendant was the father. Her evidence was to the effect that she separated from her husband February 22, 1904. The right to institute the action seems never to have been questioned although the child was conceived during lawful wedlock but was born after the divorce decree became effective. The court, in stating the law of the case, did not mention the cases of Haworth v. Gill, supra, or Miller v. Anderson, supra, although both were cited in each of the briefs of the parties. The syllabus provides:

"1. Every child begotten in lawful wedlock is presumed in law to be legitimate.

"2. Before such child can be adjudged a bastard the proof must be clear, certain and conclusive, either that the husband had no powers of procreation, or the circumstances were such as to render it impossible that he could be the father of the child."

In the case of **State ex rel Walker v. Clark, 144 Oh St 305,** the right to institute a bastardy proceeding was

in question when the child was conceived during lawful wedlock but born after the marriage had been dissolved by divorce. Again, without referring to the Haworth or Martin cases, supra, and modifying in part the second paragraph of the syllabus of Powell v. State, supra, the court held:

"1. A woman, who is unmarried (not having a lawful husband) and pregnant, may, under the provisions of §12110 GC, institute a bastardy proceeding charging another than her former husband with being the father of the child, even though such child was conceived during the existence of a lawful marriage.

"2. A child conceived during the existence of a lawful marital relation is presumed in law to be legitimate—a procreation of the husband and wife.

"3. Such presumption is not conclusive and may be rebutted by evidence, which must be clear and convincing, that there was no sexual connection between husband and wife during the time in which the child must have been conceived. (Paragraph two of the syllabus in the case of **Powell v. State ex rel Fowler, 84 Oh St 165** overruled.)"

Sec. 12110 GC to §12135 GC inclusive, dealing with the subject of bastardy, were passed for the protection of both the complainant and the illegitimate child.

The statutes as amended in 1923 made no provision upon which to award support for the bastard child and therefore it was held in **Pummell v. State ex rel Hill, 22 Oh Ap 340:**

"1. Under §12123 GC, as amended by Act, April, 1923 (110 O. L. 296) bastardy proceeding is authorized for the sole benefit of the mother and is wholly exclusive in that respect."

This chapter was amended in 1938 (117 O. L. 808) authorizing an order of support against the reputed father. In the case of **Knox v. Covrett, 85 Oh Ap 524,** the court, after quoting from Pummell v. State ex rel Hill, supra, said:

"Sec 12123 GC, was further amended in 1938 (117 O. L. 806-808) provision being made for, among other things, the support of the child until 18 years of age."

So that the Bastardy Act as amended in 1938, in part provides a benefit for the bastard child and should be construed to afford him its full protection. If it be held that where, as in this case, the complainant's husband could not be and

was not the father of the child, that the complainant cannot maintain this action for the purpose of securing a judicial determination as to who is the father of the bastard child, and an order for support when such fact is judicially established, the mother, and she alone, will hold the sole responsibility for such child's support. While the presumption of legitimacy with respect to children conceived and born in lawful wedlock should not be lightly thrown aside, yet such presumption should not be permitted to relieve wrongdoers from their full legal obligation to support their illegitimate children when a reasonable construction of the statute will permit such result.

It seems to us clear that the case of Powell v. Walker, supra, so construed §12110 GC that the complainant does have the right to maintain this action. All other questions being factual and supported by credible evidence, the judgment of the trial court is affirmed. Exceptions noted. Order see journal.

McNAMEE, J, HURD, J, concur.