Wiczynski et al., Appellants, *v.* Maher, Appellee.

(No. L-75-255—Decided June 4, 1976.)

Mr. *William J. Syring* and *Mr. James H. Hart,* for appellants.

*Mr. Peter J. Wagner,* for appellee.

Potter, J. This cause comes to our court from a series of judicial entanglements in the court below. Essentially, Anna Marie Wiczynski alleges that she had a child, Delma Ann, as a result of sexual relations with the defendant, Francis X. Maher. During the period of conception and delivery, Anna Marie Wiczynski was married and is still married to Joseph J. Wiczynski. In a separate action, Joseph J. Wiczynski sued the defendant, Maher, for alienation of affections and criminal conversation. In the cause *sub judice,* Anna Marie Wiezynski, on her own behalf (Count 1) and on behalf of Delma Ann (Count 2), brought an action for support of the child and expenses. There-

after, a motion was filed to join Joseph J. Wiczynski as a party and for intervention. An amended complaint, consisting of three counts, was filed on the same day. The first count is on behalf of Anna Marie Wiczynski, wherein she prays for a monetary judgment for the support of Delma Ann, plus expenses for her birth and medical attention, and her costs and expenses of this suit.

The second count is on behalf of Delma Ann, a minor, by her mother and next friend, and prays for a monetary judgment for her care, support, education and welfare, if the plaintiff Anna Marie Wiczynski does not receive a like amount for such minor's benefit.

The third count is on behalf of Joseph J. Wiczynski, husband of Anna Marie Wiczynski, who alleges that he is not the natural father of Delma Ann. In this count, reference is made to an amount necessary to support the minor until she is 18 years of age. Also, it includes an individual prayer of the husband for $20,000 as compensation for damages from the defendant. Thereafter, it was represented to the court that Anna Marie Wiczynski has indicated a desire to "drop the case" for the reason that she did not want to further "hurt the defendant." A motion was made to appoint Joseph J. Wiczynski herein, or some other disinterested and competent person, to protect the interest of the minor child, Delma Ann, in this case.

The defendant opposed the appointment of Joseph J. Wiczynski or some other suitable person to be "a guardian ad litem," or next friend of the minor plaintiff, Delma Ann. The trial court entered the following journal entry:

"This cause came on to be heard on the pleadings, motions, briefs, exhibits and papers filed herein and the court having made its decision, filed November 19, 1975, F. E. Warren, Judge, presiding, it is ordered in accordance with said decision that:

"The motion to join a party and for interjection is ordered dismissed. See C. R. 15.

"The motion for appointment of guardian ad litem is ordered dismissed.

"Motion to set this case for immediate trial is denied.

"Upon her request, on her own behalf and as next friend Delma Ann, a minor, plaintiff Anna Marie Wiczynski's complaint is dismissed. See C. R. 41(A)(1).

"Action dismissed at plaintiffs costs. Exceptions allowed plaintiffs."

"F. E. Warren, Judge"

From this judgment, the plaintiffs have made two assignments of error. These are as follows:

"First Assignment Of Error: The trial court erred in filing its journal entry of dismissal on December 4, 1975 based upon the decision of F. E. Warren, Judge, entered November 19, 1975, which (1) dismissing [sic] the motion of plaintiff for appointment of guardian ad litem for the minor child, (2) denying [sic] plaintiffs motion to set the case for immediate trial, (3) dismissing [sic] plaintiff Anna Marie Wiczynski's complaint filed in behalf and as next friend of Delma Ann, a minor (without appointing a substitute next friend or guardian ad litem), basing dismissal upon C. R. 41(A)(1).

"Second Assignment Of Error: The trial court erred in filing its journal entry of dismissal on December 4, 1975 based upon the decision of F. E. Warren, Judge, entered November 19, 1975, which dismissed a motion of plaintiff to join a party and for interjection (sic) citing C. R. 15."

We find the first assignment of error well taken and the second assignment of error not well taken for the reasons hereinafter stated.

The action on behalf of Anna Marie Wiczynski was dismissed by the trial court and no appeal is made from that judgment. That judgment thus eliminates the conflict of whether both the mother and the child could simultaneously maintain an action for child support from the putative father.

The first assignment of error presents the same question so scholarly considered in *Baston* v. *Sears* (1967), 11 Ohio App. 2d 220. This question is whether a minor child born out of wedlock may, through his next friend, maintain an action to determine that he is the child of the defendant, and secure, by such declaration, an order for maintenance and support.

The question is resolved in the affirmative by the case of *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228. Therein contained is an illuminating history of society's treatment of the alleged illegitimate child. As stated therein, the law formerly considered an illegitimate child the legal child of no one (*filius nullius*) and under the common law such a child had no cause of action against its progenitors for support. In this regard, the common law was evenhanded for legitimate children, likewise, had no common law cause of action for support in England and some states. See *Doughty* v. *Engler* (1923), 112 Kan. 583, 211 P. 619. As late as *Baston* v. *Sears* (1968), 15 Ohio St. 2d 166, it has been held;

"Sec. 2151.42, Revised Code, which makes it a criminal offense for the father of an illegitimate child to fail to support such child, does not give rise to a civil action for support on behalf of such child. (Sec. 2151.42, Revised Code, construed.)" (Syllabus.)

Three judges of the Supreme Court dissented, saying that the result reached was an unconstitutional discrimination against innocent children, for the statute gives a legitimate child a right of support from his father, while the majority's action denied the same right to an illegitimate child. The minority concluded that it was invidious to discriminate against the illegitimate child. The minority opinion would have affirmed the Court of Appeals of Hamilton County in *Baston* v. *Sears,* wherein reference was also made to R. C. Chapter 2721, pertaining to declaratory judgments. Other lower court cases supporting the Court of Appeals decision in *Baston* v. *Sears* and the dissent in the Ohio Supreme Court, are: *Wilson* v. *Early* (1963), 23 Ohio Op. 2d 440 and *Maiden* v. *Maiden* (1955), 78 Ohio Law Abs. 551.

In *Franklin* v. *Julian, supra,* the Supreme Court reversed its position in *Baston* v. *Sears,* decided only 4 years earlier, and that case was overruled. In its opinion in *Franklin* v. *Julian,* the court noted, at page 234:

"* * * [T]he support actions of a criminal nature ordained by R. C. 2151.42, 2903.08 and 3113.01 * * * give rise to a statutorily imposed duty of support enforceable in a

civil action on behalf of the illegitimate child or on behalf of his mother for necessaries furnished to him.

"That those statutes are now a part of our Code and apply equally to illegitimate and legitimate children fortifies our decision today."

The court further observed that the illegitimate child enjoys a statutory recognition and a status as nearly equal to that of his legitimate counterpart. The court in *Franklin* v. *Julian* then stated the following, at page 235:

"For it seems eminently sound to us that the same principle which furnishes a civil remedy on behalf of legitimate children supplementary to that provided them by statute in the case of the dissolution of the marriage of which they are the offspring suffices to furnish a similar remedy on behalf of illegitimate children to enforce the identical duty—a duty arising from fatherhood. The bastard need not be left with the criminal remedies."[1]

The court made reference to annotation 13 A. L. R. 2d 1142. (Maintenance of suit by children, independently of statute, against parent for support.) Further reference may also be made to annotation 30 A. L. R. 1069 (Nonstatutory duty of father to support illegitimate children), and annotation 34 A. L. R. 3d 1357. (Right of child to enforce provisions for his benefit in parents separation or

---

[1]*Franklin* v. *Julian, supra* and the minority decision in *Baston, supra*, anticipated *Gomez* v. *Perez* (1973), 409 U. S. 535, wherein that court held as follows, at page 538:

"Under these decisions [*Levy* v. *Louisiana* (1968), 391 U. S. 68; *Weber* v. *Aetna Casualty & Surety Co.* (1972), 406 U. S. 164] a state may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a state posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a state to do so is 'illogical and unjust.' *Id.*, at 175. We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination. *Stanley* v. *Illinois*, 405 U. S. 645, 656-657 (1972); *Carrington* v. *Rash*, 380 U. S. 89 (1965)."

property settlement agreement.)

The Supreme Court of Ohio in *Franklin* v. *Julian* made a decision remarkably similar to the one in *Doughty* v. *Engler* (1923), 112 Kan. 583, 211 P. 619, wherein the Supreme Court of Kansas nearly fifty years earlier stated: .

"The father of an illegitimate child too young to care for itself is under a nonstatutory obligation to support it, which may be enforced in an action brought by it through its next friend." (Syllabus.)

At that time, the Kansas decision was looked upon as a distinct break from the general rule which then held that in the absence of statute the father was not bound to support his illegitimate child. The Kansas court noted therein, in 1923, that the common law is, in that court's opinion, unadapted to the needs of the people, in view of the alteration in public opinion.

Attention is now directed to Civ. R. 17. Paragraph A of such rule concerns itself with the real party in interest and is to the effect that every action should be prosecuted in the name of the real party in interest. Delma Ann, a minor, is the real party in interest as to her cause of action. The defendant, in support of the trial court's entry of dismissal, asserts that since the mother has withdrawn, no other party has standing to press the child's claim as next friend and, therefore, the action must be dismissed. We hold that the issue of standing pertains only to the right of Delma Ann to bring the action as the real party in interest and the necessity for a next friend is only to fulfill the requirement of capacity and to insure that there is someone the state may look to for the payment of costs if such occurs.[2] Judge Lloyd of this court in *Hanna* v. *Titus* (1941), 68 Ohio App. 127, at 131, in his dissent, aptly pointed out that: "[T]he purpose of the statute is

---

[2]"R. C. 2307.12 Next friend liable for costs.

"(GC Sec. 11248)

"The next friend shall be liable for the costs of the action brought by him. When a next friend is insolvent the court, on motion, may require security for such costs."

to protect the minor, not to protect or advantage the defendant.''

See, also, *Bertinelli* v. *Galoni* (1938), 331 Pa. 73, 200 A. 58, quoted by both the majority and the minority in *Hanna* v. *Titus, supra,* wherein it was held that a grandmother could maintain the action on an infant's behalf even where both the child's parents were alive and supporting her in their home. It stated, at 75, 200 A. at 59:

''The sole purpose in having a next friend is to supply the want of capacity in the minor, to afford someone responsible for the costs.''

See also *Doughty* v. *Engler, supra* at 586, 211 P. at 620.[3]

---

[3] ''We do not think the legislature should be regarded as intending to relieve the father from this obligation to the child by the enactment of the statute above referred to, which authorizes the mother of an illegitimate child, if she sees fit, to maintain an action for her benefit in the name of the state against the putative father, and provides for the enforcement of a judgment by imprisonment. (Gen. Stat. 1915, ch. 50.) *It would obviously be inadequate to cover the entire field of paternal liability, since the mother might not care to institute such a proceeding, or might die without instituting it.* The measure is one providing machinery for the enforcement of a duty already existing rather than one creating a new obligation. Parental liability for the support of legitimate children did not originate with the statute of 1911 (Gen. State. 1915, §§3410-3416), imposing punishment for a default in that respect. Wagering contracts valid at common law are held nonenforceable even where they do not fall within the prohibition of statutes condemning gambling. (*Cleveland* v. *Wolff*, 7 Kan. 184; 12 R. C. L. 747, 748.) A rule of the common law may be unadapted to the conditions and unsuitable to the needs of the people of this state, although the change that has taken place is rather in the manner of looking at things—in the standard of obligation and conduct—rather than in more objective matters. Instances in which this court has refused to follow a rule of the common law, for instances based in a greater or less degree upon its essential unsoundness are collected in *Cooper* v. *Seaverns*, 81 Kan. 267, 105 Pac. 509, where the grounds of such departure are fully discussed.

''The right of a child of tender years to look to its father for support being determined, the matter of procedure presents no great difficulty. See *Craig* v. *Shea*, 102 Neb. 575, and *Sanders* v. *Sanders*, 167 N. C. 317. A court of equity, in its historical capacity as guardian of infants, can readily devise means for its enforcement.'' (Emphasis added.)

Paragraph B of Civil Rule 17 provides:

"Whenever a minor or incompetent person has a representative, such as a guardian or other like fiduciary, the representative may sue or defend on behalf of the minor or incompetent person. Subject to subdivision (C) of this rule, if a minor or incompetent person does not have a duly appointed representative he may sue by his next friend or defend by guardian ad litem."

As the staff notes to the rule indicate, the rule enunciates the principles covered by R. C. 2307.11 through 2307.17. R. C. 2307.11 stated as follows:

"Suit by an infant or insane person. * * * The action of an insane person must be brought by his guardian; and of an infant by his guardian or next friend. When the action is brought by his next friend, the court may dismiss it, if it is not for the benefit of the infant, or substitute the guardian, or any person, as the next friend."

Defendant is concerned that this action and similar actions will not be in effect for the best interest of the minor, but that the minor will be used by a vengeful, so-called next friend.

Judge Carpenter, writing for this court in *Hanna* v. *Titus, supra,* stated that the defendant, before filing this answer, may move to dismiss for the reason that the action is not for the benefit of the infant and, if the court so finds, it may dismiss the petition. Judge Carpenter noted that even without the statutory provision (G. C. 11247—R. C. 2307.11), the court has broad supervisory powers over the action and over the next friend representing the infant. The action is always subject to the control and supervision of the court. See, also, *Bertinelli* v. *Galoni, supra,* and Recent Cases, 16 Cincinnati L. Rev. 181, *Infants—Action By Next Friend.* In the latter article, it is said that there is no doubt, from the historical point of view and from that expressed in statutes, the courts have extraordinary interest and control over a suit in which an infant is a party. To like effect, see 42 American Jurisprudence 2d 153, Infants, Section 163, relative to the judicial supervision, control and removal of a next friend.

In the case sub judice, plaintiffs urge either the appointment of Joseph J. Wiczynski or some other suitable person. We find that the child, Delma Ann, has a cause of action and that a next friend should be appointed to supply her want of capacity. The trial court may determine who the suitable person is to serve as next friend and thereafter determine whether or not the action is in the best interest of the child.

The second assignment of error is not well taken, as we have earlier indicated. We do not find that Joseph J. Wiczynski falls within the parameters of Civil Rule 24.' The first part of Joseph J. Wiczynski's claim is the reiteration of the claim of the minor plaintiff and is asserted in her behalf. The second portion of the claim of Joseph J. Wiczynski is for his own recovery for alleged damages and is in no respect related to the claim of the minor plaintiff.

The judgment of the Court of Common Pleas is reversed in part and affirmed in part and the cause is remanded to such court for further proceedings according to law.

*Judgment reversed.*

BROWN, P. J., and WILEY, J., concur.

---

"'(A) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."