NORTHERN COLUMBIANA COUNTY COMMUNITY HOSPITAL ASSOCIATION, APPELLEE, *v.* DEPARTMENT OF YOUTH SERVICES, APPELLANT; HARLEY, APPELLEE.

[Cite as Northern Columbiana Cty. Community Hosp. Assn. *v.* Ohio Dept. of Youth Services (1988), 38 Ohio St. 3d 102.]

(No. 87-951—Submitted February 17, 1988—Decided August 3, 1988.)

*Robert L. Guehl Co., L.P.A.,* and *Robert L. Guehl,* for appellee Northern Columbiana County Community Hospital Assn.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark T. D'Alessandro,* for appellant.

*Nordstrom & Locke* and *Kenneth J. Nordstrom,* for appellee Howard Harley.

MOYER, C.J. This appeal requires us to determine who is responsible for payment of medical bills incurred by a

youth in the custody of the Ohio Department of Youth Services. For the reasons set forth below, we hold that under R.C. 5139.01(A)(3), the department is responsible for the medical bills of a youth in its custody.

R.C. 5139.01(A)(3)[1] defines "legal custody" as follows:

" 'Legal custody,' insofar as it pertains to the status which is created when a child is permanently committed to the department of youth services, means a legal status wherein the department has the following rights and responsibilities: the right to have physical possession of the child; the right and duty to train, protect, and control him; the *responsibility to provide* him with food, clothing, shelter, education, and *medical care*; and the right to determine where and with whom he shall live * * *; provided, that these rights and responsibilities are exercised subject to the powers, rights, duties, and responsibilities of the guardian of the person of the child, and subject to any residual parental rights and responsibilities." (Emphasis added.)

Appellant department argues that while this statute places responsibility for medical care with the department, such responsibility is subject to residual parental responsibilities. Specifically, the department cites R.C. 2151.011(B)(11) which defines "[r]esidual parental rights, privileges, and responsibilities" as "those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including but not necessarily limited to the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affilia-

tion, and the responsibility for support."

Under the Revised Code, a youth such as Michael may be committed to the department. The department then has certain powers or authority over the youth. See, *e.g.,* R.C. 5139.05, 5139.06, 5139.07, 5139.24, 5139.30, 5139.32 and 5139.39. With such powers and authority come certain duties. See, *e.g.,* R.C. 5139.01(A)(3) and 5139.04. Appellant's construction of R.C. 5139.01(A)(3) would give the department all the rights associated with legal custody without any of the accompanying responsibilities. The exception to R.C. 5139.04(A)(3), residual parental responsibilities, would subsume the rule — responsibility of the department for the medical care of those youths who are committed to it. Therefore, we hold that under R.C. 5139.01(A)(3), responsibility for payment of medical bills incurred by a youth in the custody of the department is held by the department.

The court of appeals also found the department liable under an implied-contract theory. We agree. "An implied agreement is where the terms of the contract are not expressed between the contracting parties, but the obligations of natural justice, by reason of some legal liability, impose the payment of money or the performance of some duty, and raise a promise to that effect." *Linn* v. *Ross & Co.* (1841), 10 Ohio 412, 414. In this case, the record clearly demonstrates that Michael was in the legal custody of the department and that Wymer, the foster home administrator, acting as an agent for the department, gave his verbal consent to medical care for

---

[1] Although the parties argue that R.C. 5139.01(A)(4) is the controlling statute, R.C. 5139.01(A)(3), which contains similar language, was effective at the time of Michael's injuries.

Michael. Appellee hospital association then had every right to expect payment from the department since the department is expressly given the legal responsibility for authorizing and providing medical services for Michael and did, in fact, do so.

Appellee hospital association also avers that the Court of Claims erred in failing to address its complaint against Howard and failing to grant its motion for default judgment against Howard. Because we find the Department of Youth Services responsible under R.C. 5139.01(A)(3) for payment of medical bills incurred by a youth in its custody, we need not reach these issues. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. I am in agreement with the proposition that the Department of Youth Services has the primary responsibility for payment of medical bills incurred by a youth in its custody. However, I cannot agree with the majority's conclusion that the natural parent's residual responsibility for support of his or her child, R.C. 2151.011(B)(11), may under no circumstances act as a limitation on the department's responsibilities, particularly because the statute at issue here, R.C. 5139.01(A)(3), *expressly* provides for such limitation. Furthermore, I believe that the issues involving the hospital's derivative action against Howard must be reached, inasmuch as the court of appeals below clearly misconstrued the statutes concerning third-party practice in the

Court of Claims, R.C. 2743.02(E) and 2743.03, and misapplied those statutes to the facts in the instant case. I must, therefore, respectfully dissent.

The duty of a father to support his children is a well-established principle of Ohio jurisprudence, both common law and statutory. R.C. 3103.03; 2111.08. "The duty of the father to provide reasonably for the maintenance of his minor children, if he be of ability, is a principle of natural law. And he is under obligation to support them, not only by the laws of nature, but by the laws of the land. As said by Chancellor Kent, 'The wants and weaknesses of children renders it necessary that some person maintains them, and the voice of nature has pointed out the parent as the most fit and proper person.' 2 Kent's Com. 190 * * *." *Pretzinger* v. *Pretzinger* (1887), 45 Ohio St. 452, 458, 15 N.E. 471, 473. See, also, *McDaniel* v. *Rucker* (1948), 150 Ohio St. 261, 37 O.O. 475, 80 N.E. 2d 849; *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228, 233, 59 O.O. 2d 264, 267, 283 N.E. 2d 813, 816. This court has further stated that the father's duty of support "is a duty which he owes to the state, as well as to his children; and he has no more right to allow them to become a public charge than he has to allow them to suffer for want of proper care and sustenance." *Bowen* v. *State* (1897), 56 Ohio St. 235, 239, 46 N.E. 708, 709; see, also, *Tullis* v. *Tullis* (1941), 138 Ohio St. 187, 20 O.O. 237, 34 N.E. 2d 212; *Franklin, supra.*

In order to discourage children committed to the Department of Youth Services by the juvenile court from becoming public charges, the department's responsibilities for the care and support of such children are expressly made "subject to any residual parental rights and responsibilities," R.C. 5139.01(A)(3), which phrase is statu-

torily defined by R.C. 2151.011(B)(11) to include the father's inherent duty of support. The majority states that the residual-parental-responsibilities limitation somehow "subsumes" the department's responsibilities. By failing to read this phrase in the context of the statutory scheme in which it appears,[2] the majority apparently equates a transfer of custody from juvenile court to youth services as a total, final severance of all legal relationships, rights and responsibilities of the natural parents toward the child, akin to the effects of an adoption. Cf. R.C. 3107.15. In my view, nothing in the Revised Code supports such a conclusion. To the contrary, R.C. 5139.05 and 5139.06 provide for the ultimate release of a child from the custody of Youth Services into the guardianship of the natural parents.[3] Furthermore, R.C. 2151.36 provides for support actions against the natural parents on behalf of the state to recoup medical and other expenses paid by the state from such parents who are able to pay: "When a child has been committed as provided by sections 2151.01 to 2151.54 of the Revised Code, the juvenile court may make an examination regarding the income of the parents, guardian, or person charged with such child's support, and may then order that such parent, guardian, or person pay for the care, maintenance, and education of such child and for expenses involved in providing orthopedic, medical or surgical treatment, or special care of such child. The court may enter judgment for the money due and enforce such judgment by execution as in the court of common pleas."

Thus, it is evident that although the department is primarily responsible for the care of children committed to its charge, it may pursue indemnification from those parents who are able to pay, due to such parent's "residual responsibility." Such an action against the parent, as was attempted herein, does not subsume Youth Services' statutory responsibilities, but rather furthers them, preserving the public fisc and ensuring that children are the ultimate responsibility of their parents, not the state.

Nor is such an action, when arising as it did here as a third-party claim by

---

[2] In *Humphrys* v. *Winous Co.* (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 67, 133 N.E. 2d 780, 782-783, this court stated:

"The primary duty of a court in construing a statute is to give effect to the intention of the Legislature enacting it. In determining that intention, a court should consider the language used and the apparent purpose to be accomplished, and then such a construction should be adopted which permits the statute and its various parts to be construed as a whole and gives effect to the paramount object to be attained." See, also, *Brown* v. *Martinelli* (1981), 66 Ohio St. 2d 45, 49, 20 O.O. 3d 38, 40, 419 N.E. 2d 1081, 1083; *State, ex rel. Celebrezze,* v. *Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St. 3d 24, 28, 512 N.E. 2d 332, 336 (Holmes, J., dissenting).

[3] For instance, R.C. 5139.05(B) provides, in part:

"* * * When a child has been committed permanently to the department, the department shall retain legal custody of the child until such time as it divests itself of such custody by discharging the child to the exclusive management, control, and custody of his parent or the guardian of his person, or until the committing court, upon its own motion, upon petition of the parent, guardian of the person, or next friend of a child, or upon petition of the department, terminates such custody, or until such custody is terminated automatically by the child attaining the age of twenty-one years."

the state in the Court of Claims, contrary to R.C. 2743.02(E). The court of appeals herein erroneously held that appellant cannot sue anyone but the state in the Court of Claims. In doing so, the court of appeals failed to follow settled rules of statutory construction,[4] construing R.C. 2743.02(E) in a manner which would seem to be inconsistent with other contemporaneous statutory provisions. Notwithstanding R.C. 2743.02(E), we would point out that another section also refers to that court's jurisdiction. As stated in R.C. 2743.03:

"(A) There is hereby created a court of claims. The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state * * *, exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims, and jurisdiction to hear appeals from the decisions of the court of claims commissioners. The court shall have full equity powers in all actions within its jurisdiction *and may entertain and determine all* counterclaims, crossclaims, and *third-party claims.*

"* * *

"(E)(1) A party who files a counterclaim against the state or makes the state a third-party defendant in an action commenced in any court, other than the court of claims, shall file a petition for removal in the court of claims. * * *

"(2) * * * The court of claims shall adjudicate all civil actions removed. * * *" (Emphasis added.)

Pursuant to subsection (E) of this section, it is clear that the Court of Claims may, in cases justifiably removed to it from another court, have jurisdiction over defendants other than the state and thus has jurisdiction in such cases to entertain motions for default judgment against them. More important to the instant case, subsection (A) grants the court jurisdiction to entertain all third-party claims, with the obvious potential for defendants other than the state being joined under the Court of Claims' jurisdiction.

R.C. 2743.02(E) merely clarifies the effect of the state's limited waiver of sovereign immunity in subsection (A) of that statute. Subsection (E) provides two things: first, an original action filed in the Court of Claims against the state may name only the state as a defendant. Non-sovereign co-defendants are prohibited. It was on this basis that the hospital association's initial complaint against Howard Harley as a co-defendant was dismissed, and properly so. Second, R.C. 2743.02(E) makes it clear that once the state is named as a defendant, the full mechanism for countersuits provided in the Rules of Civil Procedure is available to it, including counterclaims and third-party claims.[5] In the instant case, the Department of Youth Services, after the original complaint

---

[4] R.C. 1.47 provides, in part:

"In enacting a statute, it is presumed that:

"* * *

"(B) The entire statute is intended to be effective;

"* * *

"(D) A result feasible of execution is intended."

[5] R.C. 2743.03(D) further provides that "[t]he Rules of Civil Procedure shall govern practice and procedure in all actions in the court, except insofar as inconsistent with this chapter." I fail to see how a third-party complaint by the state, which brings in a third-party defendant subject then to a derivative suit by the original plaintiff, is in any way inconsistent with R.C. 2743.02(E). See Civ. R. 14(A) in text, *infra.*

against Howard was dismissed, filed its third-party complaint against him for contribution or indemnity. This third-party derivative suit was lawful, pursuant to both R.C. 2743.02(E) and Civ. R. 14(A), as Howard was a person "who is or may be liable to * * * [the state] for all or part of the plaintiff's claim against * * * [the state]." Finally, once Howard was properly made a party in the derivative action in the Court of Claims, he became subject to a claim by the hospital association. Civ. R. 14(A) provides, in part:

"* * * The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13. * * *" See, also, McCormac, Ohio Civil Rules Practice (1970), Section 8.26.

The hospital association's derivative complaint against Howard was specifically permitted by the Civil Rules and consistent with both R.C. 2743.02(E) and 2743.03, and thus should not have been dismissed for lack of jurisdiction. To conclude, as the court of appeals necessarily has, that the Court of Claims has jurisdiction over third-party actions upon removal of an action, but does not have similar jurisdiction when the original action against the state is brought in that court, is not in conformity with the language of R.C. 2743.02(E) and overlooks the effect of the provisions of R.C. 2743.03.

I cannot join in such a conclusion and would reverse the court of appeals' judgment in its entirety.

LOCHER and WRIGHT, JJ., concur in the foregoing dissenting opinion.