ST. CLARE CENTER, INC., APPELLEE, *v.* MUELLER; WERSCHING, APPELLANT.

(No. C-850896—Decided
August 27, 1986.)

*Heuck & Ganson* and *Michael B. Ganson,* for appellee.

*Santen, Shaffer & Hughes* and *James P. Wersching,* for appellant.

BLACK, J. This appeal is from a judgment in favor of a rest home against the son and daughter of an elderly woman for the balance due on their mother's account at the rest home after her funds were exhausted. The son's notice of appeal was filed out of time, and we are not concerned with his liability.[1] The daughter's notice of appeal was filed in time, and in support of her denial of any liability to assist with her mother's expenses, she presents three assignments of error, claiming that the trial court erred when if found the existence of a contract between her and the rest home (second assignment of error), when it failed to take into account the effect of appellant's denial of liability (third assignment of error), and when it failed to give her the benefit of the Statute of Frauds (first assignment of error).

We find no merit in any of the assignments of error, for the underlying reason that the conclusions of the trial court are not against either the sufficiency or the weight of the evidence. After a bench trial, the court concluded that despite the absence of an express promise of appellant Catherine Wersching to pay for her mother Catherine Mueller's support after Mrs. Mueller's assets and other resources[2] were exhausted, there was an implied contract by appellant and her brother to pay the balance on her mother's account. For the reasons that follow, we affirm that judgment.

An implied contract in this situation may arise under principles of common law. A criminal statute, R.C. 2919.21(A)(3), makes it a misdemeanor of the first degree for a person to fail to provide adequate support for an aged or infirm parent unable to provide his or her own support, but it has been held that this does not create a civil liability counterpart. *Slapin* v. *Slapin* (S.D. Ohio 1964), 233 F. Supp. 716, 28 O.O. 2d 260; *Gardner* v. *Hines* (C. P. 1946), 34 O.O. 25, 68 N.E. 2d 397. Under common law, however, a contract need not be evidenced by an express exchange of promises but may be implied from acts and conduct of the parties under the facts and circumstances in evidence. *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gaffney* (1901), 65 Ohio St. 104, 61 N.E. 152;

---

[1] We note in passing that the son claimed that by monthly remittances he made to the rest home, he had already paid more than his fifty-percent share of the overall shortage of his mother's assets and resources.

[2] The record suggests that Mrs. Mueller had about $10,000 in a bank account and that her Social Security benefits were paid over against her account at the rest home. We call the Social Security benefits "other resources."

*Stranahan Brothers Catering Co.* v. *Coit* (1896), 55 Ohio St. 398, 45 N.E. 634; *First Natl. Bank* v. *Green* (1884), 40 Ohio St. 431. Thus, the mutuality that underlies a contract may be implied when the party charged with responsibility requested the services and knew that they would be performed by the claimant with the reasonable expectation (under the circumstances) that the responsible person would pay for them. *Tanski* v. *White* (1952), 92 Ohio App. 411, 49 O.O. 492, 109 N.E. 2d 319.

In the instant case, we find ample evidence to support the trial court's finding of an implied contract between appellant Catherine Wersching and the rest home (now known as St. Clare Center, Inc., but formerly known as Franciscan Terrace), despite appellant's claim that since she did not sign anything, she was not responsible. The evidence discloses the following circumstances. Mrs. Mueller, close to eighty years of age, had been living alone after her husband's death about a year before, and her physician recommended that she enter a rest home. Her priest suggested that her daughter consider Franciscan Terrace. After the priest and the daughter made arrangements with the rest home, defendant Col. F. J. Mueller, USAF Ret., appellant's brother, came to Cincinnati from his station at Wright-Patterson Air Force Base, and on June 10, 1976, an application form was completed at the rest home. Col. Mueller filled in the blanks, mainly from information furnished by his sister. The two agreed between themselves to report their mother's bank assets as aggregating $3,500, whereas they knew she had about $10,000 in that account (or elsewhere). In the blank after the question "What are your children able to contribute to your support?" the Colonel wrote "All necessary." He alone signed the form.[3] Mrs. Mueller did not sign the application or any written document; apparently she was not present on June 10, 1976, and appellant stated that her mother "knew nothing of what was going on over there, no."

After the application was accepted by Franciscan Terrace, Mrs. Mueller made at least three visits there, the last one for a "final interview" on August 19, 1976. The charges against her account began October 18, 1976, suggesting that that was her date of arrival. She stayed until March 1985, and died within a few months after leaving the rest home. The unpaid arrearage was $9,748.31.[4]

Appellant knew that when her mother entered the institution she was in good health and would probably live a long time, thus giving rise to the inference that appellant knew her mother's assets and other resources would not be sufficient to pay her full account at the rest home. When the deficiencies were called to her attention, appellant asked that the rest home use its "charitable fund" to cover them (the rest home refused); she once offered $2,000 to settle the matter. Meanwhile, her brother had been contributing regularly to his mother's account and clearly acknowledged responsibility for fifty percent of the arrearage.

The evidence demonstrates not

---

[3] Appellant cross-claimed against her brother for all amounts she might be ordered to pay. The cross-claim was denied, but the denial is not raised as an error in this appeal.

[4] Plaintiff's complaint asks for $9,712.31, but the court awarded $9,748.31. The discrepancy of $36 is not explained, but neither the discrepancy nor the reasonableness of plaintiff's charges on the mother's account are challenged by appellant on appeal.

only an implied offer and acceptance but an implied meeting of the minds. The implied contract, undertaken jointly with her brother, was to supply whatever funds appellant could to pay for her mother's obligation to the rest home to the extent that her mother's assets and other resources were insufficient. The second assignment of error has no merit.

We also overrule the third assignment of error in which appellant asserts, in essence, that the rest home had a duty to mitigate damages (that is, to stop the buildup of charges in her mother's account) after appellant had denied any responsibility for the deficiency. First, this claim was not made before the trial court and cannot therefore be raised on appeal. Second, we are not persuaded that the rule requiring mitigation of damages applies against a rest home so as to require it to evict an elderly woman with minimal resources and unknown ability to cope by herself the moment her daughter denies liability for her support.

The first assignment of error has no merit because the Statute of Frauds does not apply in this case. R.C. 1335.05 precludes any action to charge a person to answer for the debt of another unless the agreement or memorandum on which the action is brought is in writing and signed by that person.[5] In this case, however, appellant's implied contract was not to "answer for" her mother's duty to pay the rest home but to supply whatever

funds she could to pay for her mother's care furnished by the rest home to the extent that her mother's assets and other resources were insufficient. Thus, the action against appellant was not brought to charge her on her mother's personal obligation to the rest home but rather on her own obligation. So far as appellant's responsibility is concerned, there was no "debt of another," because even though we may conclude that Mrs. Mueller impliedly agreed to pay for her room, board and other expenses at the rest home, that agreement must be deemed to have been completed at the point when Mrs. Mueller's assets and other resources were insufficient. It is at that point that appellant's direct obligation to the rest home became effective.

We affirm.

*Judgment affirmed.*

DOAN, P.J., and KLUSMEIER, J., concur.

---

[5] R.C. 1335.05 reads in pertinent part:

"No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."