CUYAHOGA COUNTY HOSPITALS, Appellant,

v.

PRICE et al., Appellees.

[Cite as *Cuyahoga Cty. Hospitals v. Price* (1989), 64 Ohio App.3d 410.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56395.

Decided Dec. 26, 1989.

412

*Kasdan, Baxter & Lamm Co., L.P.A., Howard P. Kasdan* and *John D. Zoller,* for appellant.

*John W. Hickey,* for appellees.

JOHN F. CORRIGAN, Judge.

Plaintiff Cuyahoga County Hospitals appeals from the judgment of the trial court entered in favor of Arthur and Clarabelle Price in plaintiff's collection action. For the reasons set forth below, the judgment of the trial court is reversed, and final judgment is entered in favor of plaintiff.

## I

On October 11, 1986, Arthur Price was admitted to Cleveland Metropolitan General Hospital for emergency treatment of leg cysts and swelling. Price was discharged on October 17, 1986, incurring medical expenses of $4,045.68. Price, who is afflicted with elephantiasis and receives some government assistance because of this condition, completed an application for county assistance in meeting the charges. Price was determined to be ineligible, however, as he was then earning $115 per week, and this figure exceeded the standards established by the Department of Health and Human Services.

On September 8, 1987, plaintiff filed this collection action against Price and his wife Clarabelle. Defendants submitted an answer in which they denied liability for the services rendered, and affirmatively averred that treatment was rendered gratuitously, as the hospital was advised that defendants are indigent. In addition, defendants filed a third-party complaint for indemnification against the county commissioners and the Department of Health and Human Services.

At a subsequent pretrial conference, the trial court issued a journal entry instructing the county to attempt to find an exception to its previous determination that Price was ineligible for assistance in meeting the hospital's charges. Apparently, no such exception was discovered, however, and on June 10, 1988, the parties entered into a stipulation for dismissal of defendants' third-party complaint.

The matter proceeded to a bench trial on July 13, 1988. For its case, plaintiff presented the testimony of Janet Marz, a manager in its billing department who established that Price had incurred charges of $4,045.68 from the hospitalization, less a $26 credit. Marz further averred that this sum remained unpaid, and she and David Amos, a manager in patient billing, established that the charges were reasonable.

Plaintiff's evidence next established that Price had applied for county assistance in paying his bill. On this application, Price indicated that he owned his own home, earned $115 per week, and had $500 in savings. Finally, plaintiff's evidence demonstrated that Price had signed an "assignment of benefits" which stated that he was financially responsible for all charges not covered by insurance or other benefits.

On cross-examination, Marz admitted that Price's application for county assistance was prepared as the result of Price's conversation with personnel in the admitting department of the hospital, as Price stated that he had no insurance and requested help in paying the bill.

For defendants' case, Arthur Price testified that he described his financial status to someone in admitting who then had him sign the application for county assistance to "see if Welfare will pay." Price further testified that he was never told that he would be responsible for the bill if determined to be ineligible.

On cross-examination, Price stated that he understands that bills must be paid. In addition, Price admitted to signing the "assignment of benefits" which deemed him ultimately responsible for his medical costs. The court determined, however, that Price could not read this document and that he could not understand its terms when it was read to him.

The trial court subsequently found that defendants were indigent when Price was admitted to the hospital, that plaintiff knew of defendants' indigency, and that Price reasonably understood that he would not be responsible for the charges. The court then concluded that defendants were not liable for the charges pursuant to express or implied contract theories.

## II

For its first assignment of error, plaintiff argues that the judgment of the trial court is contrary to law because defendants are liable for Price's medical bills by operation of an express contract and an implied contract. We consider plaintiff's contentions in turn.

### A. Express Contract

An express contract connotes an exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound. *Lucas v. Costantini* (1983), 13 Ohio App.3d 367, 369, 13 OBR 449, 451, 469 N.E.2d 927, 929. To recover on such a contract, the proponent must prove the existence of an agreement, based on a meeting of the minds and on mutual assent, to which the parties intend to be bound. *Id.* at 368, 13 OBR at 450–451, 469 N.E.2d at 929.

The relationship between the signing of an agreement and the attainment of a meeting of the minds was set forth as follows in *Kroeger v. Brody* (1936), 130 Ohio St. 559, 566, 5 O.O. 210, 213, 200 N.E. 836, 839:

"Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an instrument and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance." Cf. *McAdams v. McAdams* (1909), 80 Ohio St. 232, 241, 88 N.E. 542, 544; *Campco Distributors, Inc. v. Fries* (1987), 42 Ohio App.3d 200, 203, 537 N.E.2d 661, 664.

■ Thus, the signing of an agreement and acquiescence in its effect may demonstrate a meeting of the minds, where the signatory is able to read and comprehend the agreement. Conversely, one who can neither read nor comprehend an agreement cannot be said to have manifested a meeting of the minds by signing that agreement. Accord *Lane v. Ultra–Lite, Inc.* (Aug. 24, 1984), Lucas App. No. L–84–087, unreported, 1984 WL 14220 (affirming trial court's determination that parties did not reach a meeting of the minds on liquidated damages provision of a contract where plaintiff signatory was illiterate and defendant failed to explain this provision to him).

■ In this case, the trial court's questioning of Arthur Price revealed that although he signed the "assignment of benefits" which deemed him financially responsible for all charges not covered by insurance, he could not read this instrument and could not understand its terms when it was read to him. Accordingly, there is no indication that the parties attained a meeting of the minds when this document was signed, and the trial court properly determined that defendants were not liable on this express contract.

## B. Implied Contract

" * * * 'An implied agreement is where the terms of the contract are not expressed between the contracting parties, but the obligations of natural justice, by reason of some legal liability, impose the payment of money or the performance of some duty, and raise a promise to that effect.' * * * " *Northern Columbiana Cty. Community Hosp. Assn. v. Ohio Dept. of Youth Services* (1988), 38 Ohio St.3d 102, 104, 526 N.E.2d 802, 804, quoting *Linn v. Ross Co.* (1841), 10 Ohio 412, 414.

■ An implied contract may be proved by showing that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended. *Lucas v. Costantini, supra,* 13 Ohio App.3d at 369, 13 OBR at 451, 469 N.E.2d at 929–930.

"The most obvious example of the use of the implied contract concept occurs where a recovery is sought for services rendered or materials furnished and the circumstances are such that people expect to be paid and pay for such conduct. The law is said to 'imply' an obligation on the part of a person who benefits from the services or materials received to pay for the services or materials. *Ashley v. Henahan* (1897), 56 Ohio St. 559, 574 [47 N.E. 573, 577]. However, the plaintiff must prove that the defendant either requested or assented to such conduct under conditions precluding an inference that the plaintiff acted gratuitously." *Id.*

Circumstances creating the expectation of payment sufficient to support liability on an implied contract theory were discussed in *Northern Columbia-*

na Cty. Community Hosp. Assn. v. Ohio Dept. of Youth Services, supra, and in St. Clare Center, Inc. v. Mueller (1986), 34 Ohio App.3d 69, 517 N.E.2d 236.

In Northern Columbiana Cty. Community Hosp. Assn., supra, the Supreme Court determined that the Department of Youth Services was liable for medical services rendered to a youth in its custody on the basis of an implied contract where a foster home administrator from the department authorized that medical care and where the department was statutorily responsible for the medical bills of youths in its custody.

In St. Clare Center, Inc., supra, the Court of Appeals for Hamilton County determined that the daughter of a woman who had incurred expenses at a rest home was liable for those expenses on the basis of an implied contract where the daughter, acting with the woman's son, arranged the woman's admission into the rest home and the son indicated that they would pay "all necessary" expenses for their mother's support.

In the situation now presented, we find the circumstances to support the hospital's claim that the circumstances surrounding Price's hospitalization were such that payment from Price was reasonably to be expected. First, it is undisputed that Price requested the emergency treatment rendered. Further, while Price informed the hospital that he did not have insurance and further indicated that he would need help in paying the bill, this does not support the inference that the hospital acted gratuitously in treating Price, but rather, indicates that Price fully understood that payment was expected from him. This conclusion is inescapable, moreover, as a deposition of Price filed with the court reveals that Price is currently making payments for hospital services rendered to his wife, despite his current financial difficulty. Accordingly, the trial court erred in determining that defendants were not liable for the charges on the basis of an implied contract.

## C. Joint and Several Liability

Plaintiff further claims that the trial court erred in concluding that Clarabelle Price is not jointly and severally liable for the debt as this aspect of the court's ruling contravenes this court's holding in Cleveland Metro. Gen. Hosp. v. Oleksik (1987), 38 Ohio App.3d 21, 525 N.E.2d 831.

In Cleveland Metro. Gen. Hosp. v. Oleksik, supra, we held that the financial resources of both spouses should be available to pay a creditor who provides necessary goods and services to either spouse. Accordingly, Oleksik is applicable to this case, as we have determined that plaintiff is in fact a creditor of Arthur Price, by operation of an implied contract. Thus, the

resources of both Arthur and Clarabelle Price must be made available to meet the hospital's charges.

## III

In its second assignment of error, plaintiff contends that the judgment of the trial court is against the manifest weight of the evidence because findings of fact Nos. 10 to 15 are not supported by the evidence adduced at trial.

■■■■■■ Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. Further, in evaluating a claim that the judgment of the trial court is against the manifest weight of the evidence, a reviewing court should be guided by a presumption that the findings of the finder of fact were indeed correct. *Id.* With the foregoing principles in mind, we consider each of plaintiff's contentions.

### A. Finding of Fact No. 10

"That Price completed the 5th grade, and that upon cross examination, it developed that he could neither read nor write."

We note that the trial court subsequently amended this finding of fact to indicate as follows:

" * * * that Arthur Price Sr. can be considered to read and write at a level that does not allow the comprehension of an understanding adult. * * * "

■■■■ While plaintiff correctly notes that there was no evidence concerning Price's overall reading, writing, and comprehension abilities, the trial court's questioning of Price did reveal that he could not read the "assignment of benefits," and that he could not understand the terms of this document when it was read to him. We hold that this constitutes competent, credible evidence to support finding of fact No. 10.

### B. Finding of Fact No. 11

"That Price did not know he was signing for responsibility of payment of Plaintiff, and to the contrary, indicated he could not pay for said services."

■■■■ In accordance with our previous remarks, there is competent, credible evidence that Price did not understand the "assignment of benefits." Nonetheless, there is no evidence in the record to support the court's finding that Price indicated that he could not pay for the services, as Price's own trial testimony refuted this claim. Accordingly, this portion of Finding of Fact No.

11 is unsupported by any competent, credible evidence, and is therefore reversed.

## C. Finding of Fact No. 12

"That Price relied on certain representations by the hospital that he would not be responsible for said charges."

■ While the record demonstrates that Price told hospital personnel that he did not have insurance and that he understood that the charges would be submitted to the Department of Health and Human Services, Price, by his own admission, understood that this was done to "see *if* Welfare will pay." (Emphasis added.) Further, Price could not recall any representation that he would not be liable. Thus, the court's finding that Price relied upon representations that he would not be responsible for payment is unsupported in the record and is accordingly reversed.

## D. Findings of Fact Nos. 13 and 14

"That Defendant Arthur Price is unable to pay for the services rendered by the Plaintiff.

"That Defendant Clarabelle Price is unable to pay for the services rendered by the Plaintiff."

■ Plaintiff does not challenge the sufficiency of the evidence supporting these findings of fact, but rather, contends that defendants' financial status is irrelevant to their liability for the charges. In accordance with our remarks on liability pursuant to expressed and implied contract theories, this contention is well taken.

## E. Finding of Fact No. 15

"That the Plaintiff knew that Defendant Arthur Price was unable to pay for said services at the time of the admission."

■ This finding is refuted by Price's admission that he never told hospital personnel that he was unable to pay the bill, and by the fact that Price indicated that he was employed and owned his own home at the time he was admitted. Thus, this finding of fact is unsupported by competent, credible evidence and is reversed.

In accordance with the foregoing, plaintiff's second assignment of error is sustained in part, and overruled in part.

## IV

In its fourth assignment of error, plaintiff argues that the trial court erred in denying its motion for a new trial as the trial court demonstrated bias in favor of defendants by ordering the Department of Health and Human Services to attempt to find coverage for Price at the June 9, 1988 pretrial.

In its fifth assignment of error, plaintiff argues that the trial court further demonstrated bias through certain comments at a later pretrial and this demonstration both warranted the granting of plaintiff's motion for a new trial, and also deprived plaintiff of its right to trial before an unbiased tribunal. Both assignments lack merit.

Plaintiff's proper avenue of recourse was to file an affidavit of prejudice with the Supreme Court no later than three days before the scheduled trial date. R.C. 2701.03. Having forgone this remedy, plaintiff will not be heard to complain after the trial, with an unfavorable result in hand. Cf. *Household Consumer Discount Co. v. Pokorny* (1978), 60 Ohio App.2d 253, 257–258, 14 O.O.3d 232, 234–235, 396 N.E.2d 803, 806–807.

## V

In its final assignment of error, plaintiff contends that the trial court erred in denying its motion to tax costs and its supplemental motion to tax costs. The taxing of costs is governed by Civ.R. 54(D), which provides as follows:

"Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."

This rule vests a trial court with a measure of discretion to determine whether costs may be awarded to the prevailing party in various situations. See *Jones v. Pierson* (1981), 2 Ohio App.3d 447, 449, 2 OBR 542, 544–545, 442 N.E.2d 791, 794–795. As plaintiff is now a prevailing party by operation of this journal entry and opinion, the matter must be remanded for consideration of plaintiff's motion for costs.

For the foregoing reasons, the judgment of the trial court is reversed, judgment is entered for plaintiff, and the cause is remanded for consideration of plaintiff's motion for costs.

*Judgment accordingly.*

ANN McMANAMON, C.J., and NAHRA, J., concur.