**Linda REED, Plaintiff,**

v.

**Todd WEHRMANN, et al., Defendants.**

**No. C2–99–340.**

United States District Court, S.D. Ohio, Eastern Division.

March 26, 2001.

Kevin John O'Brien, Kevin O'Brien & Assoc., Columbus, OH, for Plaintiff.

Patrick Edward Sheeran, Franklin County Prosecuting Atty., Columbus, OH, for Defendants.

### MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This matter is before the Court on Plaintiff Linda Reed's August 18, 2000 motion to enforce a settlement agreement between the parties and to set a hearing on the matter of attorney's fees. (Record 29). Defendants Todd Wehrmann, Renee Williams, Kenneth Cohen and Franklin County Children Services ("Defendants") have filed a response to this motion. (Record 32).

## I. BACKGROUND

Plaintiff commenced this action on April 9, 1999 under 42 U.S.C. § 1983. (Record 1). In her complaint, Plaintiff seeks an order requiring Franklin County Children Services ("FCCS") to remove her name from the Ohio Department of Human Services Central Registry for Child Abuse and Neglect. (Complaint at 11).[1] Plaintiff also seeks attorney fees and costs, pursuant to 42 U.S.C. § 1988. (*Id.*).

On July 17, 2000, FCCS extended an offer of settlement to Plaintiff. The terms of the settlement offer were set forth in a faxed memorandum sent by FCCS counsel Robin Rader. (Record 29, Ex. 1). The offer states in full:

FCCS will change the [d]isposition of their institutional investigation of Linda Reed from substantiated neglect to unsubstantiated neglect in exchange for the dismissal of the current action and waiver of all claims. No financial compensation is offered, nor liability admitted. The central registry is changed

immediately upon transmission of the FCCS change, per ODHS. Linda Reed can then request of ODHS a request (sic) for a certification, which would show in 2–3 weeks [sic] the removal.[2]

After consulting with Plaintiff, Plaintiff's counsel Kevin O'Brien sent a response to Rader later that day. The response (Record 29, Ex. 2) states:

We are in receipt of your fax of this A.M. regarding the captioned matter. Linda Reed accepts the County's offer of settlement. It is our understanding that the County will enter into a consent decree and remove Linda's name from the Central Registry, which is the injunctive relief that Linda sought in her complaint against the County, et al. As you'll recall, no compensatory damages were requested in Linda's Complaint against the County and its our understanding that no financial compensation is being offered to Linda by the County.

Robin, at this point, the County has offered Linda precisely the injunctive relief which she prayed for in her Complaint. The law requires that the County now pay Linda's attorney fees as the Plaintiff is the "prevailing party" and has obtained substantial relief, 42 U.S.C. 1988. As you may know, Congress intended to make attorney's fees available in case that are settled .... In this case, Ms. Reed is the prevailing party because the settlement of her lawsuit is causally related to the achievement of the relief obtained and Franklin County has not acted gratuitously ....

---

1. As a result of an investigation of St. Joseph's orphanage in Cincinnati, Ohio, Plaintiff's name was placed on the Central Registry with a finding of "substantiated neglect," the harshest of the three Registry designations, "unsubstantiated neglect," "indicated neglect," and "substantiated neglect." *See* Record 32 at 2.

2. According to Defendants, removal of Plaintiff's name from the Central Registry would occur after the change from "substantiated neglect" to "unsubstantiated neglect," followed by a successful request for certification from the Ohio Department of Human Services ("ODHS"). *See* Record 32 at 3 n. 2.

In view of the foregoing, our position is that this case is now settled and that we must now move on to the issue of the Plaintiff's counsel fees. We are transmitting a copy of this letter to the Court with our request that this case be scheduled for a hearing on the matter of Plaintiff's counsel fees at the Court's convenience.

Later that same day, counsel for FCCS informed Plaintiff's counsel that he had misinterpreted the terms of FCCS' offer, and that Plaintiff's response to the offer constituted a counteroffer to settle on the same basic terms, with the additional terms of attorney's fees, which FCCS rejected. (Record 29 at 3).

On August 18, 2000, Plaintiff filed a motion to enforce this settlement, and to set a hearing on the matter of attorney's fees. (Record 29). Plaintiff subsequently filed a statement of attorney's fees, which indicates that as of September 30, 2000, Plaintiff has incurred $23,415 in attorney's fees. (Record 30). Defendants filed a response to Plaintiff's motion on October 19, 2000. (Record 32). Plaintiff did not file a reply.

■■■■ The rule in the Sixth Circuit is that where the very existence of a settlement agreement is in dispute, the entry of an order enforcing an alleged settlement agreement without a plenary evidentiary hearing is improper. *See Noga v. Parts Assocs., Inc.*, No. 98–3789, 2000 WL 178385 at *2 (6th Cir. Feb. 8, 2000) ("when the parties dispute the existence of a binding agreement, this circuit generally requires the district court to conduct an evidentiary hearing"); *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 153 (6th Cir.1992); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976); *Kukla v. National Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973). *See also Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337, Syl. ¶ (1997) ("Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment").

This is a case in which the very existence of a settlement agreement is in dispute. However, this case involves a purely legal question, i.e., did Plaintiff's response constitute a valid acceptance, resolution of which would not be aided by a plenary hearing. Additionally, the parties in this case have not indicated a need for such a hearing. Thus, the Court finds it appropriate to consider Plaintiff's motion to enforce the settlement agreement without holding an evidentiary hearing.

## II. DISCUSSION

The issue before the Court is whether there is a settlement agreement to enforce. Plaintiff argues that she accepted the terms of Defendants' offer, which was silent as to attorney's fees, without alteration, and thus a valid settlement agreement was formed. She contends that upon her acceptance of the offer the underlying dispute was settled, and that she is now entitled to pursue her "statutory right to apply for attorney fees predicated upon a settlement in which she was the prevailing party." (Record 29 at 6). Thus, according to Plaintiff, her response to the offer was both an acceptance of the offer, and a notification that she intended to pursue attorney's fees. According to Plaintiff, the request for attorney's fees was not an additional term, but a separate statutory right which arose upon Plaintiff's acceptance of the offer. Plaintiff further argues that if Defendants intended their offer to exclude attorney's fees, they should have

included an express waiver providing for such.[3]

In contrast to Plaintiff, Defendants contend that there is no settlement agreement to enforce because the parties never reached an agreement. Defendants contend that the term "no financial compensation is offered" can only refer to attorney's fees, because Plaintiff has not asserted claims for any type of compensatory or monetary damages. (Record 32 at 3). Defendants also argue that the "waiver of all claims" clause constitutes a waiver of any claim for attorney's fees, and that they offered Plaintiff the "unsubstantiated neglect" designation in exchange for dismissal and no liability for attorney's fees. As to the intention of the parties, Defendants direct the Court's attention to a May 25, 2000 letter sent by Plaintiff to Defendants, which proposes a potential settlement. (Record 32, Ex. A). The letter reads:

> As you know, our attorneys (sic) fees in this case now well exceeds (sic) ten thousand dollars. Our goal in this case, since it's (sic) start, has been to have Linda Reed's name removed from the Central Registry to be non-negotiable. However, we believe that our insistence upon being paid the full measure of our attorneys (sic) fees in this case has become a roadblock to settlement. Accordingly, if the County will remove Ms. Reed's name from the Central Registry, we will agree to accept eight thousand dollars ($8,000.00) in counsel fees in full settlement of Ms. Reed's case.

Defendants contend that this letter supports their interpretation of the offer's terms, because under the terms of the "settlement" Plaintiff now seeks to enforce, Defendants would pay more attorney's fees ($23,415) than they would have paid ($8,000) under Plaintiff's earlier offer which they rejected. According to Defendants, logic dictates that they would not enter into a settlement agreement without knowledge of the total amount of attorney's fees after rejecting an offer which reduced the fees to $8,000.

Finally, Defendants argue that there is no valid settlement agreement because neither the board of county commissioners, nor the children services board had approved, nor they have subsequently ratified, such an agreement. *See* O.R.C. 305.25, 5153.16(C). Thus, Ms. Rader, counsel for Defendants, did not have authority to enter into a settlement agreement.

The first issue in this case is whether the parties reached a settlement agreement. If the Court finds that the parties did enter into an enforceable settlement agreement, the second issue is whether Defendants are obligated to pay Plaintiff's attorney's fees pursuant to the agreement.

### Settlement Agreement

■ Settlement agreements are a type of contract subject to principles of state contract law. *See Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir.1992); *Continental W. Condominium Unit Owners Ass'n v. Howard E. Ferguson, Inc.,* 74 Ohio St.3d 501, 502, 660 N.E.2d 431, 432 (1996) ("It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by

---

**3.** Plaintiff also argues that the term "compensatory damages" does not include attorney's fees awarded to a prevailing party. Although this may be true, it is irrelevant, because as Defendants correctly point out, their offer does not use the term "compensatory damages." Instead, the offer states, "No financial compensation is offered." *Plaintiff* uses the more limited term "compensatory damages" in her purported acceptance of Defendants' offer, but the offer itself uses the broader term "financial compensation."

either party"). The parties agree that the issues before the Court are governed by Ohio contract law. *See* Plaintiff's Motion to Enforce, Record 29 at 3; Defendants' Reply, Record 32 at 5. As a contract, a valid settlement agreement requires a meeting of the minds as well as an offer and an acceptance thereof. *See Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337, 339 (1997). "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." *Id.* The Ohio Supreme Court has cautioned that "courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants." *See Rulli,* 79 Ohio St.3d at 377, 683 N.E.2d at 339.

The burden of establishing the elements of a contract is on the party asserting the existence of a settlement agreement. *See Nilavar v. Osborn,* 127 Ohio App.3d 1, 11, 711 N.E.2d 726, 732 (1998); *Cuyahoga County Hosps. v. Price,* 64 Ohio App.3d 410, 415 581 N.E.2d 1125, 1128 (Ohio App. 8th Dist.1989) (proponent of an express contract must prove the existence of an agreement). As Plaintiff is asserting the existence of a settlement agreement, she has the burden of establishing the elements of a contract.

There is no doubt that FCCS' July 17, 2000 letter is a settlement offer. Thus, the next question is whether Plaintiff's response to the offer constitutes a valid acceptance. A contract is formed only where no material variance exists between the terms of the offer and those of the acceptance. *See Goldfarb v. The Robb Report, Inc.,* 77 Ohio App.3d 362, 369, 602 N.E.2d 329, 334. At common law, the terms of the acceptance, in order to be binding, were required to be the "mirror image" of the terms set forth in the offer. *See Foster v. Ohio State Univ.,* 41 Ohio App.3d 86, 88, 534 N.E.2d 1220, 1222 (Ohio App. 10th Dist.1987); *Aramac Supply Co. v. Leblond Makino Mach. Tool Co.,* No. 84-0136, 1984 WL 7092 at *3 (Ohio App. 1st Dist. Dec. 5, 1984) (citing S. Williston, The Law of Contracts § 73) (3d ed.1957). "An acceptance of an offer forms a binding contract only if it corresponds to the offer in every respect." *Watral v. Tree Preservation Co., Inc.,* No. 76853, 2000 WL 502878 at *3 (Ohio App. 8th Dist. Apr. 27, 2000). "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance, but a rejection and a counteroffer." *Foster,* 41 Ohio App.3d at 88, 534 N.E.2d at 1222 (citing Restatement of Contracts 2d 145, § 59 (1981)). *See also Telephone Management Corp. v. Goodyear Tire & Rubber Co.,* 32 F.Supp.2d 960, 969 (N.D.Ohio 1998).

In the case at bar, Defendants' offer is silent as to attorney's fees. Plaintiff's response to that offer, while purporting to be an acceptance of the offer, raises the issue of attorney's fees. This a new term which is clearly not contemplated by the terms of Defendants' offer. Plaintiff's approach to the issue of attorney fees reflects the nature of § 1988 recovery, in that attorney's fees are considered to be a "collateral matter" which is addressed only after a plaintiff is determined to be the "prevailing party." *See White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 452, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). However, such an approach is inapplicable where the parties intended to reach a full settlement of the dispute upon entering into the agreement.

The language of Defendants' offer indicates an intent to settle all claims arising from the litigation. Although attorney's fees are not mentioned, the offer states that "no financial compensation is being

offered." Other than attorneys' fees and costs, Plaintiff has asserted no monetary claims. Additionally, according to Defendants, the offer of the lowest registry designation of "unsubstantiated neglect" was given in exchange for dismissal of the action and waiver of all claims, including attorney's fees. Citing *Ellis v. University of Kansas Medical Center.*, 163 F.3d 1186 (10th Cir.1998), Plaintiff argues that even where a party agrees to fully release all claims pursuant to a settlement, that party may recover § 1988 fees unless the right to do so is specifically waived in the agreement. What Plaintiff fails to note, however, is the *Ellis* court's statement that "when the language of a settlement agreement or release is inconclusive ... [the] examination must focus on whether such fees were discussed and intended to be covered by the settlement." *See Ellis,* 163 F.3d at 1200. In *Ellis,* the court found the settlement agreement to be ambiguous, and remanded the matter to the trial court to conduct an evidentiary hearing on whether attorney's fees were discussed and intended to be covered by the settlement. *See id.* The court held that where a settlement agreement of civil rights claims is silent on the issue of attorney's fees and costs and the parties claim conflicting intentions, the "losing" party bears the burden of proving that the parties mutually intended the agreement to include a release of a § 1988 claim. *See id.* at 1201.

In *Jennings v. Metropolitan Government of Nashville,* 715 F.2d 1111 (6th Cir. 1983), the Sixth Circuit Court of Appeals likewise considered the intent of the parties to a settlement agreement which was silent as to attorney's fees, and found that the settlement agreement's silence was not controlling. The court noted that "it is not necessary for the parties to have reached a separate agreement on each aspect of the claim in order to have reached a settle-

ment in full," and that the record before the court permitted "only the single inference that the parties intended to settle their dispute in full." *See id.* at 1114.

■ Unlike *Ellis,* where it was unclear whether the parties had addressed the issue of attorney's fees, and thus the trial court was required to conduct an evidentiary hearing on that matter, the case at bar is more like *Jennings,* in that there is no question that the issue of attorney's fees was addressed, and the intent of the parties may be discerned from those facts.

In addition to the language of the offer, the parties' prior negotiations indicate that the issue of attorney's fees had been addressed, and that Plaintiff's counsel believed their insistence upon being paid the "full measure" of their fees to be a "roadblock to settlement." *See* Record 32, Ex. A. Additionally, Defendants rejected Plaintiff's offer to accept $8,000 in attorney's fees. As Defendants argue, it defies logic that Defendants would reject an offer to pay $8,000 in attorney's fees and then shortly thereafter agree to settle the case and be liable for an unknown, but certainly much more substantial amount of fees. Plaintiff's counsel's observation that the claim for attorney's fees had become a "roadblock to settlement" supports Defendants' contention that Defendants would not have agreed to settle the case if the settlement required them to pay all of Plaintiff' attorney's fees.

Although the Court encourages the settlement of claims, and urges the parties to continue their efforts to settle this matter, the Court simply cannot enforce the purported settlement agreement, because the terms are not reasonably certain and clear. The parties did not enter into a valid settlement agreement because Plaintiff's response to Defendants' offer included an additional term which constituted a materi-

al variance from the terms of the offer. The language of the offer and the parties' prior negotiations indicate that Defendants intended their offer to fully settle all claims, and that Plaintiff's counsel were well aware that liability for attorney's fees was a "roadblock to settlement."

### CONCLUSION

For the reasons set forth herein, the Court hereby **DENIES** Plaintiff's motion to enforce the settlement agreement (Record 29). Plaintiff's motion to set a hearing on attorney's fees is therefore **MOOT** (Record 29).

**IT IS SO ORDERED.**