JOURNAL ENTRY and OPINION
Plaintiff University Commons Associates Limited is a limited liability partnership which owned an apartment building in Cleveland. It hired defendant Commercial One Asset Management (Commercial Asset), Inc. to manage the property. Unfortunately, expenses exceeded rents and the mortgagor foreclosed on the property. University Commons sold the property using a separate company, Commercial One Realty, Inc. (Commercial Realty) to broker the sale. Following the sale, University Commons brought this breach of contract, breach of fiduciary duty and negligence action against both Commercial Asset and Commercial Realty. Commercial Realty filed a motion for summary judgment in which it claimed it bore no liability in the management of the property since it was not a party to the management contract. The court agreed and granted partial summary judgment, certifying no just reason for delay.
We are required to look at the facts and inferences in a light most favorable to University Commons and determine whether there is any genuine issue of material fact and whether Commercial Realty is entitled to judgment as a matter of law. See Civ.R. 56(C). The facts show that University Commons purchased the property in question in 1986, and Hagen managed the property himself. In 1995, Hagen hired Axiom Property Management Co. to manage the property and prepare it for sale. Hagen became dissatisfied with Axiom's performance, however, and in August 1996, contracted with Commercial Asset to manage the property.
The management agreement between University Commons and Commercial Asset provided that Commercial Asset would manage the rent rolls, maintain the property, make disbursements on behalf of the University Commons, and make all debt service payments to the bank holding the mortgage on the property. In addition, the contract required Commercial Asset to render a monthly statement of receipts, disbursements and charges, as well as prepare financial statements and inform University Commons of the need to supplement the trust account with funds sufficient to ensure the continued operation of the premises.
At the time the parties entered into the property management contract, Hagen informed Commercial Asset that he had no intention of putting more money into the property because he intended to sell it. To that end, he signed a broker's agreement with Commercial Realty beginning in October 1996 and running through April 1997. Commercial Realty actively marketed the property and received purchase offers for the property in January and February 1997. Hagen did not immediately respond to either offer.
The management agreement between University Commons and Commercial Asset began well enough, but in March 1997 Hagen first learned that the bank holding the mortgage on the property had foreclosed. He claimed this was the first time he had been made aware that the property was in financial difficulty. The evidence conflicts on this point, for Commercial Asset claimed that it first notified Hagen of the financial difficulties in January 1997, but Hagen said that he did not receive these letters, nor did he receive financial statements for January, March and April 1997. We are obligated to resolve this difference most favorably to University Commons.
In any event, Commercial Asset told Hagen that it had contacts with the bank holding the mortgage and it would negotiate terms with the bank. The terms that were negotiated remained unacceptable to Hagen because they included a sale of the property and required Hagen to pay forward on his own personal note that the bank held in a separate matter. Rather than agree to the terms necessary to avert final foreclosure, Hagen accepted an offer to sell the property. He accepted a price below what he wanted, and blamed the selling price on poor management by Commercial Asset.
The substance of Commercial Realty's motion for summary judgment was that it was not a party to the management agreement and that all claims set forth in the complaint relate only to Commercial Asset. Commercial Realty argued that it was a separate entity from Commercial Asset and that it was not a party to the commercial real estate management contract signed in August 1996.
Commercial Asset and Commercial Realty are run by David Holzer and Stephen Holzer, respectively. They were both separate corporations, and neither brother served on the board of directors of the other corporation. During the time frame in question, the two companies did not share office space or staff.
Although the complaint named both Commercial Asset and Commercial Realty as defendants, the claims for relief were based on the commercial real estate management contract that Hagen signed with Commercial Asset. Paragraph 5 of the complaint alleges, On or about August 29, 1996, the Plaintiff entered into a contract know as a Commercial Real Estate Management Contract with Defendant, Commercial Asset * * *. Even though University Commons alleged that Commercial Realty acted both individually and as an agent of Commercial Asset in both negotiating the above-described contract with the Plaintiff and executing the terms of such after completion, none of the specific claims of breach can reasonably be applied to Commercial Realty. Those claims were set forth in paragraph 8 of the complaint:
 The Defendants, acting jointly and in concert with one another, breached the terms of the Plaintiff's contract with Commercial Asset by: (1) failing to properly maintain the trust account on behalf of the Plaintiff; (2) failing to properly disburse payment of all expenses related to the operation of the premises; (3) failing to make all debt service payments to the Plaintiff's mortgagee from the Plaintiff's trust account; (4) failing to render to the Plaintiff an accurate monthly statement of receipts, disbursements, and accounts; (5) failing to make available to the Plaintiff, upon reasonable notice, all financial records concerning the premises; (6) failing to adequately prepare an annual budget for the premises and provide monthly statements to the Plaintiff indicating actual versus budgeted figures; (7) failing to inform the Plaintiff in writing and with reasonable prior notice of the Plaintiff's need to supplement the Plaintiff's trust account with sufficient funds to ensure continued operation of the premises; and (8) generally failing to fulfill Commercial Asset [sic.] contractual obligations to the Plaintiff in a diligent fashion.
An express contract is an exchange of promises where the parties communicate in some manner the terms to which they agree to be bound. Lucas v. Costantini (1983), 13 Ohio App.3d 367, 369. One of the essential elements of an express contract is a meeting of the minds, usually shown by an offer and acceptance. Noroski v. Fallet (1982), 2 Ohio St.3d 77,79; Nilavar v. Osborn (2000), 137 Ohio App.3d 469, 484. To recover on an express contract, the proponent must prove the existence of an agreement, based on a meeting of the minds and on mutual assent, to which the parties intend to be bound. A meeting of the minds is most often shown by a signed offer and acceptance. Cuyahoga Cty. Hospitals v. Price (1989), 64 Ohio App.3d 410, 416.
None of the allegations contained within paragraph 8 of the complaint stem from any form of contract between University Commons and Commercial Realty. The allegations very clearly stem from the management contract, and it is undisputed that Commercial Realty was not a signatory to the contract. Commercial Realty had no obligations under the management agreement; therefore, any allegation that Commercial Realty had breached the management agreement would fail as a matter of law.
University Commons concedes that Commercial Realty did not sign the management contract, but claims that the court should have pierced the corporate veil to find that Commercial Realty and Commercial Asset were the same entity. In its opposition to Commercial Realty's motion for summary judgment, University Commons argued that the contracts between it and both Commercial Asset and Commercial Realty were intertwined to the extent that one Commercial entity could not be distinguished from the other. Its sole means of proving this argument was to note that when negotiating the management agreement, University Commons and Commercial Asset agreed to strike a paragraph from the boilerplate management contract. That paragraph contained a standard commission clause applicable in the event Commercial Asset was the procuring cause of a sale of the property. Commercial Asset said it agreed to strike the clause since University Commons had previously agreed that Commercial Realty would be responsible for marketing and selling the property.
An individual officer or shareholder of a corporation cannot be held liable for acts or debts of the corporation. Section 3, Article XIII of the Ohio Constitution. In some circumstances the rule against liability may be overcome with a showing that the corporation is the alter ego of an individual. Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when:
 (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
University Commons presented no facts to create a triable issue on corporate control. The facts show that Commercial Asset and Commercial Realty were sufficiently different in form and operation as to preclude operation of the alter ego doctrine. The two companies kept separate offices and at the time of the events giving rise to this action neither Holzer brother served on the board of directors of the other. No evidence tended to show that one corporation controlled the other corporation.
Most importantly, University Commons cannot show that it suffered any injury as a result of alleged control by Commercial Realty. The allegations of the complaint all stemmed from breaches of the management agreement. Commercial Realty did not sign this agreement and no evidence was produced to show how Commercial Realty could have been responsible for any of the claimed breaches set for in paragraph 8 of the complaint.
It was incumbent upon University Commons to come forward with evidence to the contrary and the best it could do was point out that Commercial Asset agreed to strike a standard commission clause because Commercial Realty had a preexisting broker's agreement with University Commons. There is nothing telling about Commercial Asset's agreement to strike the commission clause. In fact, University Common's own evidence showed that it was Hagen's idea to strike the clause. David Holzer testified that Peter was concerned that he would then be faced with a five percent commission to Commercial One Asset Management, Inc. as well as Commercial One Realty.
University Commons' evidence is likewise self-defeating because David Holzer testified that Commercial Asset always included a standard commission clause in its management contract because if I am trying to secure the opportunity to sell a building for them down the road, it's often a paragraph * * * we always put in our boiler plate because it gives us the opportunity to participate in the sale. D. Holzer Aff. at 60-61. David Holzer's statement would suggest that Commercial Asset tried to land sales commissions on its own, completely apart from Commercial Realty. The only reasonable inference is that both Commercial Asset and Commercial Realty competed against the other. This would explain why University Commons asked Commercial Asset to strike the standard commission clause from the management agreement.
Finally, University Commons claimed that questions of fact exist as to whether Commercial Realty owned any management duties, the breach of which would be actionable negligence. Aside from rearguing that Commercial Realty undertook to perform responsibilities that were assigned to Commercial Asset, University Commons argued to the court that questions of fact existed concerning Commercial Realty's negotiations with the bank that had foreclosed on the mortgage.
While the rules of pleading do not require that a claim be alleged with precision, the complaint must still set forth operative facts showing the basis for the claim. See Civ.R. 8(A). In Stipanovich v. Applin (1991),74 Ohio App.3d 506, 510, the court stated:
 A pleading which sets forth a claim for relief need not state with precision all the elements which give rise to a legal basis for recovery as long as fair notice of the action is provided; however, the pleading must contain * * * allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.
University Commons' complaint came nowhere close to alleging that Commercial Realty was negligent in negotiating terms with the bank holding the mortgage on the property. Count 3 of the complaint simply alleged that by virtue of the above-described acts and omissions of the Defendants (a reference to paragraph 8 of the complaint) both Commercial Asset and Commercial Realty were negligent. As all of the allegations in paragraph 8 of the complaint stemmed from the management agreement which Commercial Realty did not sign, no duties under that agreement could have been breached. At the risk of putting too fine a point on our conclusion, it bears noting that the allegation of proximate cause contained in Count 3 of the complaint alleged that the negligence resulted in University Commons becoming delinquent in its mortgage payments. Again, this was solely a duty owed by Commercial Asset under the management agreement. The court did not err by granting summary judgment to Commercial Realty. The assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN PRESIDING JUDGE ANN DYKE, J., and TERRENCE O'DONNELL, J., CONCUR.