**In re LTV STEEL COMPANY, INC., et al., Debtors.**

**LTV Steel Company, Inc., Plaintiff,**

v.

**Ferrous Metal Processing Co., Defendant.**

**Bankruptcy No. 00–43866. Adversary No. 02–4110.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 28, 2003.

---

Lisa B. Gates, Jones Day, Cleveland, OH, appeared on behalf of Plaintiff.

Mark A. Phillips, Robert C. Psaropoulos, Coplan & Aronoff, LLP, Cleveland, OH, appeared on behalf of Defendant.

Saul Eisen, Cleveland, OH, United States Trustee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Chief Judge.

Debtor/Plaintiff LTV Steel Company, Inc. ("Plaintiff") filed a complaint against Defendant Ferrous Metal Processing Co. ("Defendant") alleging claims for turnover and conversion of funds. A trial was held on this matter on April 29–30, 2003. Lisa B. Gates, Esq. appeared on behalf of Plaintiff. Mark A. Phillips, Esq. and Robert C. Psaropoulos, Esq. appeared on behalf of Defendant. Post-trial briefs and responses were filed. The following represents this Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.

## DISCUSSION

### A. Facts

Plaintiff filed a petition for relief under Chapter 11 of Title 11, United States Code, on December 29, 2000. Plaintiff filed a complaint against Defendant alleging claims for turnover and conversion of funds. Plaintiff claims Defendant improperly twice-charged for the same services: the storing and handling of certain steel coils. Defendant argues that it entered into two separate agreements with two discrete customers.

It is undisputed that Defendant billed both LTV–Cleveland and Copperweld (also known as LTV Marion, LTV Copperweld). *See* Apr. 29, 2003 Tr. at 180. The issue is whether that billing was improper, as Plaintiff contends, or proper, as Defendant argues.

### B. Plaintiff's Argument

Plaintiff argues the entire agreement between the parties is memorialized in two blanket purchase orders from Copperweld to Defendant. The first is dated May 30, 2001 and is Plaintiff's Exhibit D. The second is dated January 15, 2002 and is Plaintiff's Exhibit Y. Each incorporates by reference an integration clause, a no additional changes clause and a no oral modification clause. The incorporated clauses are Plaintiff's Exhibit E. Both purchase orders indicate the same charges for storage and handling of steel received by Defendant: $1.25 per ton of steel for the "in" charge, $1.25 per ton of steel for the "out" charge and $1.25 per ton of steel for storage charges. Freight charges also

applied. *See* Pl.'s Exs. D and Y. The January 15, 2002 purchase order, however, differs from the May 30, 2001 purchase order in that it states "Vendor Part # WAREHOUSING / PICKLING" on page two. *See* Pl.'s Ex. Y. Plaintiff argues that this phrase "specifically states that it is for 'Warehousing.'" *See* Pl.'s Post–Trial Br. at 7. Plaintiff also characterizes the January 15, 2002 purchase order as a "warehousing agreement" in its complaint at ¶ 2. Plaintiff argues that only these two purchase orders are the entire agreement between the parties.

### C. Defendant's Argument

Defendant agrees that the two purchase orders described above reflect its agreement with Copperweld. Defendant, however, disputes that the January 15, 2002 purchase order is an agreement to warehouse steel for LTV–Cleveland. Defendant argues that a separate agreement was negotiated with LTV–Cleveland to warehouse steel for LTV–Cleveland. Defendant relies on an e-mail that Defendant sent to LTV–Cleveland which memorialized the terms of a conversation in November 2001. The e-mail is dated November 27, 2001 and is Defendant's Exhibit 4. The e-mail explains that Defendant will charge LTV–Cleveland $1.25 per ton of steel for the "in" charge, $1.25 per ton of steel for the "out" charge and $1.25 per ton of steel for storage charges. Defendant did not receive a response to this e-mail. *See* Apr. 29, 2003 Tr. at 151. Instead, LTV–Cleveland shipped at least twenty-five thousand (25,000) tons of steel to Defendant for storage. *See id.* at 157.

On February 22, 2002, Defendant met with representatives from both LTV–Cleveland and Copperweld to reconcile accounts. *See id.* at 164–65. Defendant argues that as a part of a settlement, LTV–Cleveland cleared its account with Defendant, and Defendant agreed to cease billing LTV–Cleveland under the November 2001 agreement. *See id.* at 169.

On May 17, 2002, the parties agreed to a payment amount for storage charges as Plaintiff requested that Defendant release the stored steel. *See* Pl.'s Ex. LL. Defendant received a check for Two Hundred Thirty Thousand Dollars ($230,000.00). *See id.* This number was approximate, and the parties were to meet again on May 22, 2002 to reconcile the amount. *See id.* On May 22, 2002, Defendant learned that the February 22, 2002 agreement for storage charges was in question as well as the May 17, 2002 amount. *See* Apr. 29, 2003 Tr. at 175.

### D. Evidentiary Issues

Plaintiff filed a motion *in limine* to exclude evidence of the alleged oral agreement, memorialized in the November 2001 e-mail, regarding storage and handling charges for Plaintiff's steel coils at the facility of Defendant. Plaintiff relies on the parol evidence rule, arguing that the rule prohibits Defendant from introducing evidence of an oral agreement when a written, integrated contract covers the subject matter at issue.

▮ The Ohio Supreme Court reviewed the meaning of the parol evidence rule in *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996):

> The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements.... "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of **antecedent understandings and negotiations**

will not be admitted for the purpose of varying or contradicting the writing" (citations omitted) (emphasis added).

*Ed Schory & Sons, Inc.,* 75 Ohio St.3d at 440, 662 N.E.2d 1074.

 The oral statements Defendant seeks to have admitted in this proceeding were not antecedent to the written contract. The parol evidence rule simply does not apply. Plaintiff's objection is overruled.

 Plaintiff also objects to these same statements as based on hearsay. By definition, hearsay is offered to prove the truth of the matter it asserts. *See* FED. R. EVID. 801(c). "An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay." *United States v. Hanson,* 994 F.2d 403, 406 (7th Cir.1993) (citations omitted). The Court concludes that the statements are being offered to show the state of mind of Defendant's representative with respect to the commercial relationships in which it was engaged. Moreover, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (citation omitted). Plaintiff had a full and fair opportunity to cross-examine Defendant's witnesses and provide contrary evidence. Plaintiff's objection is overruled.

## ANALYSIS

Considering two days of testimony, the voluminous exhibits, all papers filed with this Court and the record as a whole, the Court finds the evidence weighs in favor of Plaintiff, but not for the reasons Plaintiff articulated.

 In order for a contract to exist, there must first be a meeting of the minds, which generally includes an offer and acceptance. An offer is "a manifestation to another of assent to enter into a contract if the other manifests assent in return by some action, often a promise but sometimes a performance." E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 3.3 (2d ed.2001). Acceptance is "the action (promise **or performance**) by the offeree that creates a contract (i.e., makes the offeror's promise enforceable)." *Id.* (emphasis added).

 An implied contract arises when the circumstances make it reasonably certain that an agreement was intended. *See Cuyahoga County Hosps. v. Price,* 64 Ohio App.3d 410, 581 N.E.2d 1125, 1128 (1989). The law implies an obligation to pay on the part of the person who benefits from the services or material received. *See id.* The plaintiff must prove that the defendant either requested or assented to the conduct under conditions which preclude an inference that the plaintiff acted gratuitously. *See id.* "A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor." *Pierson v. Sanborn (In re Pierson's Estate),* 282 Mich. 411, 276 N.W. 498, 499 (1937).

 In the instant case, a new contract was indeed formed by the November 2001 e-mail and the acceptance by performance. The e-mail explained that Defendant will charge LTV–Cleveland $1.25 per ton of steel for the "in" charge, $1.25 per ton of steel for the "out" charge and $1.25 per ton of steel for storage charges. Defendant did not receive a response to this e-mail. *See* Apr. 29, 2003 Tr. at 151. Instead, LTV–Cleveland shipped at least twenty-five thousand (25,000) tons of steel to Defendant for storage. *See id.* at 157.

LTV–Cleveland requested and assented to the terms of the November 2001 e-mail under conditions which preclude an inference that Defendant acted gratuitously in warehousing the steel: Defendant offered to warehouse the steel, pursuant to the above terms, and LTV–Cleveland accepted the terms by performing and delivering the steel. This implied contract changed the relationship among the parties. Previously, Defendant received steel from LTV–Cleveland for the benefit of Copperweld, and billed Copperweld. The November 2001 e-mail formed a new commercial relationship because Defendant was now storing steel for the benefit of LTV–Cleveland, not Copperweld. The purchase orders agreement did not apply to these actions.

Plaintiff's argument that Defendant double-billed the same entity is not persuasive. The Court finds credible Defendant's evidence that the two entities, LTV–Cleveland and Copperweld, held themselves out as separate and distinct companies. *See id.* at 141–43. As such, Defendant can bill LTV–Cleveland for the steel it stored for LTV–Cleveland's benefit, but Defendant can not bill Copperweld for the steel stored for the benefit of LTV–Cleveland.

Plaintiff alleges that the total amount of damages for which Defendant is liable totals Two Hundred Nine Thousand Two Hundred One and 38/100 Dollars ($209,201.38). *See* Pl.'s Post–Trial Br. at 2. The duplicate charges that Plaintiff paid totals Ninety–One Thousand Six Hundred Twenty–Nine and 18/100 Dollars ($91,629.18). *See id.* Plaintiff also claims damages in the amount of Thirty–Three Thousand Two Hundred Dollars ($33,200.00). Plaintiff alleges this amount is for storage and

handling of certain other coils for which no charges should have been incurred because the coils had been processed. *See id.* Plaintiff also claims damages in the amount of Thirty–Nine Thousand Nine Hundred Forty and 77/100 Dollars ($39,940.77). Plaintiff alleges this amount was billed to it as well as Chrysler, a third-party buyer of the steel. *See id.*[1] At trial, Plaintiff approximated a fourth set of damages in the amount of Forty–Four Thousand Dollars ($44,000.00); Plaintiff alleges Defendant owed this amount as an offset to earlier payments Plaintiff made. *See* Apr. 29, 2003 Tr. at 63.

Defendant claims an administrative expense in the amount of Eighty–Five Thousand Seven Hundred Sixty–Six and 45/100 Dollars ($85,766.45). See Def.'s Post–Trial Br. at 14. This claim is being litigated in the instant proceeding as a counterclaim to Plaintiff's adversary claim. Defendant alleges that this amount is the total due it from Plaintiff, pursuant to a settlement agreement between the parties.

The agreement in effect between Defendant and LTV–Cleveland was that Defendant will charge LTV–Cleveland $1.25 per ton of steel for the "in" charge, $1.25 per ton of steel for the "out" charge and $1.25 per ton of steel for storage charges. The amount Plaintiff paid twice, supported by the record, totals Ninety–One Thousand Six Hundred Twenty–Nine and 18/100 Dollars ($91,629.18). Plaintiff is awarded judgment in this amount.

Plaintiff's other claims for damages are not supported by the record. Plaintiff's claim for damages in the amount of Thirty–Three Thousand Two Hundred Dollars ($33,200.00) is only an estimate and not supported by persuasive documentation.

---

1. The total amount of damages Plaintiff alleges of Two Hundred Nine Thousand Two Hundred One and 38/100 Dollars ($209,201.38) is not the total of the three subtotals as pleaded by Plaintiff. This, however, is of no moment as the Court relies on the subtotals for determining damages.

*See* Apr. 29, 2003 Tr. at 71–74. Plaintiff's claim for damages in the amount of Thirty–Nine Thousand Nine Hundred Forty and 77/100 Dollars ($39,940.77) is likewise not adequately supported by the record. *See id.* Plaintiff's claim for damages in the amount of Forty–Four Thousand Dollars ($44,000.00) is not supported by persuasive evidence. The Court affords little weight to the testimony surrounding this claim, as this amount was the result of settlement negotiations. *See id.* at 64.

### CONCLUSION

Defendant's claim for an administrative expense in the amount of Eighty–Five Thousand Seven Hundred Sixty–Six and 45/100 Dollars ($85,766.45) is denied. The amount of this claim had been paid once by Copperweld, and LTV–Cleveland need not pay it again.

This Court orders judgment for Plaintiff in the amount of Ninety–One Thousand Six Hundred Twenty–Nine and 18/100 Dollars ($91,629.18).

An appropriate order shall enter.

### ORDER

For the reasons set forth in this Court's memorandum opinion entered this date, Plaintiff is awarded judgment in the amount of Ninety–One Thousand Six Hundred Twenty–Nine and 18/100 Dollars ($91,629.18). Defendant's claim for an administrative expense in the amount of Eighty–Five Thousand Seven Hundred Sixty–Six and 45/100 Dollars ($85,766.45) is denied.

**IT IS SO ORDERED.**